UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

CINDY HOLMES,

       Plaintiff,                              05 CIV 2950 (CM)

      vs.                                **Plaintiff's Reply to Defendant's
                                                Rule 56.1 Statement**

IBM,

       Defendants.
--------------------------------------------------------x

**PLAINTIFF'S RESPONSES TO DEFENDANT'S STATEMENTS OF ALLEGEDLY UNDISPUTED MATERIAL FACT**

1. Admitted.

2. Denied.  Plaintiff initially worked for IBM between August 24, 1981 and May 31, 1993. [Exhibit 22, p. 2].

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted, but plaintiff believes she was better qualified than Spiecker. See, Holmes Affidavit, para. 2.

Page 1

Page 1

7. Admitted, but plaintiff believes she was better qualified than Spiecker for promotion to Band 4. See, Holmes Affidavit, para. 2.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.

12. Denied.

13. Denied. See, Holmes' Affidavit, para. 3.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted, but plaintiff was better qualified for promotion to Band 4 than Kloepping. See, Holmes' Affidavit, para. 4.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted, but plaintiff was better qualified for promotion to Band 4 than Belladone-Edwards. See, Holmes' Affidavit, para. 5.

Page 2

22.  Admitted.

**PLAINTIFF'S CONTENTIONS AS TO DISPUTED MATERIAL FACTS** [1]

1.  Plaintiff initially worked for IBM between August 24, 1981 and May 31, 1993, [Exhibit 22 to Sussman Affirmation, p. 2], when defendant laid her off.

2.  She returned to defendant's employ in July 2000 as a Band 3 Production Technician Specialist in the 200 Millimeter Department. [Exhibit 1 to Holmes Affidavit at 104, Exhibits 1 & 2 to Sussman Affirmation].

3. IBM employs a system of ten bands to assign levels and salaries. [Exhibit 11 to Holmes Affidavit]. Its reference guide has vague requirements for these bands. Id., page 0461.

4.  Defendant's Position Reference Guide Description defines the ten bands based on three equally weighed factors: Skills, Contribution/Leadership and Impact on Business/Job Scope. [Exhibit 12 to Holmes' Affidavit].

5.  These references set no minimum educational or job-related experience as

---

[1] References are as follows: [Exhibit #] is a reference to the exhibits attached to the Sussman Affirmation; [Holmes, para. # ] are references to Holmes' annexed Affidavit and Holmes at # is a reference to Holmes' Deposition excepts which are attached to her Affidavit under Exhibit 1. Finally, [Holmes Affidavit, Ex #] is a reference to an exhibit attached to plaintiff's Affidavit.

Page 3

Page 3

requirements for any band, including 4. Id.

6. Upon returning to IBM in July 2000, plaintiff, a Band 3, was assigned Dawn Powell-Manso, an African-American, as her supervisor and placed in Dept OGAA on second shift. [Exhibit 2 to Sussman Affirmation]. There were two other African-Americans in this unit of about 25 employees. [Holmes Affidavit, para. 2]

7. After five months at work, Powell-Manso found that Holmes had achieved some/most employment commitments and wrote that plaintiff, "has made very good strides in training and getting certified in all Control Center task[s] [sic]." [Exhibit 3 to Sussman Affirmation].

8. Plaintiff's job required her to interface with vendors, contractors and engineers. She was responsible for using "specialized knowledge, tools, techniques and procedures and resolve multiple complex technical problems." [Exhibit 4 to Sussman Affirmation].

9. In May 2002, plaintiff was not promoted to Band 4; a white female named Jodi Spiecker was so promoted. [Exhibit 23 to Sussman Affirmation].

10. At this time, plaintiff spoke with her supervisor, Powell-Manso, who had told her that she was worthy of a promotion, but indicated it would be too much of a hassle for her to explain promoting plaintiff as they were both black. [Exhibit 1 to

Page 4
Page 4

Holmes at 46, 139-143].

11.  Holmes was better qualified in an objective manner than Spiecker for a promotion.  By May, 2002 plaintiff had been a band 3 or its equivalent for five years, as compared to three years for Spiecker. [Exhibit 27 to Sussman Affirmation].

12.  As of May 1, 2002, plaintiff was performing control center job functions, while Spiecker was functioning as an expediter.  [Exhibit 1 to Holmes Affidavit at 144].

13.  For more than one year before the promotion, Spiecker was plaintiff's back-up as Holmes served as team lead. [Exhibit 1 to Holmes Affidavit at 146].

14.  Holmes also had superior educational qualifications for the position.  Spiecker had no degree in computer management applications as did plaintiff. [**Cf.**, Exhibit 24 to Sussman Affirmation with Holmes' Affidavit, para. 2].

15.  Moreover, between July 2000 and May 1, 2002, plaintiff had attended 13 educational programs at IBM compared to 2 by Spiecker. Cf, Exhibits 28 & 29 to Sussman Affirmation.

16.  Further, since her last promotion, in May 1999, to a Band 3, Spiecker had received no company awards while plaintiff had. [Exhibit 25 to Sussman

Page 5
Page 5

Affirmation].

17. Spiecker's performance review was comparable, but not superior to, plaintiff's for the period ending December 31, 2001. [Exhibit 26 to Sussman Affirmation]. In that same time period, Holmes received numerous letters of recommendation. [Exhibit 5 to Sussman Affirmation]. In addition, during this time frame, Spiecker was out of work a great deal with medical issues. [Exhibit 1 to Holmes Affidavit at 147].

18. Effective the same day Spiecker was promoted, May 1, 2002, plaintiff received a 10% pay increase for merit; Powell-Manzo stated that she felt plaintiff would appreciate the raise more than a promotion. [Exhibit 1 to Holmes' Affidavit at 134].

19. In August 2002, Powell-Manso gave plaintiff an "extraordinary" rating of 1 and commented on her professionalism and leadership, noting that Holmes had trained numerous people in the department. [Exhibit 5 to Sussman Affirmation].

20. The same month, frustrated that she had not been promoted, plaintiff transferred to 300 Millimeter [Exhibit 1 to Holmes' Affidavit at 136, 139] and came under a new manager, Jim DiPietro. [Holmes Affidavit, para. 6]. In early 2003, he rated plaintiff as a 2 "achieved/exceeded commitments." His commentary

Page 6

Page 6

concerning her performance was laudatory. [Exhibit 6 to Sussman Affirmation].

21. In early 2003, plaintiff told DiPietro she was unhappy that she had not been promoted to Band 4. [Exhibit 7 to Sussman Affirmation, Holmes Affidavit, para. 7]. In response, DiPietro advised plaintiff that it was unlikely she would be promoted that year. [Holmes Affidavit, para. 7].

22. DiPietro told Holmes that he could only promote one person to Band 4 and it would not be her. [Holmes Affidavit, para. 7].

23. Holmes understood this promotion would go to Erin Mitchell [as it did later during the calendar year]. See, Exhibit 2 to Holmes Affidavit which shows Mitchell's promotion to Band 4 effective November 1, 2003. [2]

24. At the time of this conversation, Holmes had an Associates Degree from Westchester Business Institute in Computer Application Management. [Exhibit 1 to Holmes' Affidavit at 40-41] and had worked at IBM for some 15 years.

25. The individual she understood would be promoted, Mitchell, a Caucasian, [Holmes Affidavit, para. 7], commenced working at IBM as a production operator under DiPietro as a Band 2 in April 1998. She had a high school education and no college education. Exhibits 30, 40-42 to Sussman Affirmation.

---

2 Defendant's Affidavits do not address the Mitchell promotion, word of which prompted plaintiff to complain months before it was accomplished.

Page 7

Page 7

26. In November 2000, Mitchell advised her superior that she had no interests or aspirations for advancement. [Exhibit 31 to Sussman Affirmation].

27. In 2002, when plaintiff received an extraordinary evaluation, Mitchell's was lower. [Exhibit 32 to Sussman Affirmation].

28. In February 2001, Mitchell was promoted to the position of Production Technician, Band 3, a position she held for two and one-half years, until her November 2003 promotion to Band 4. See, Exhibit 2 to Holmes' Affidavit.

29. Upon her promotion, she was earning about $800 more than plaintiff/year. Cf., Exhibit 2 to Holmes' Affidavit with Exhibit 27 to Sussman Affirmation.

30. Having taken her grievance concerning her failure to be promoted in 2002 to her first line supervisor without resolution and having now been advised she would not be promoted in 2003, on January 27, 2003, plaintiff asked for the assistance of Edwin Scott, her second line supervisor. [Exhibit 8 to Sussman Affirmation, Holmes Affidavit, para. 8].

31. When Scott queried him about his comments to plaintiff, DiPietro denied telling plaintiff she would not be promoted. [Exhibit 1 to Holmes' Affidavit at 176].

32. But, Scott provided plaintiff no assistance and defended the decision not to

Page 8

promote plaintiff in January 2003. [Holmes Affidavit, para. 8].

33.  At about the same time, DiPietro told plaintiff [the only African-American then in the department] that she could not go to a 25th year retirement luncheon for one of the other workers. [Exhibit 1 to Holmes' Affidavit at 177, 185].

34. DiPietro also pulled work, referred to as inhibits, from plaintiff and refused to give her equitable assignments. [Exhibit 1 to Holmes' Affidavit at 178-79].

35.  In this light, on March 7, 2003, plaintiff filed a charge of racial discrimination against IBM with the New York State Division of Human Rights, which provided a copy of the charge to IBM on April 8, 2003. [Exhibit 9 to Sussman Affirmation].

36.  On March 23, 2003, plaintiff sought to initiate IBM's Open Door Policy. [Exhibits 10 & 11 to Sussman Affirmation].

37.  On March 24, 2003, Theow Lau from CorpAppeals took basic information from Holmes, including her claim of racial discrimination in denial of promotion to Band 4. [Exhibit 12 to Sussman Affirmation].

38.  Rather than designating an investigator without input from the Fishkill managers, IBM's HR representatives from off site asked Fishkill HR associates to assist in designating an investigator for the Open Door. [Exhibit 13 to Sussman Affirmation].

Page 9

39. By e-mail dated April 4, 2003, the HR Team Lead at East Fishkill advised Scott of the open door and the identity of the investigator. [Exhibit 14 to Sussman Affirmation].

40. The Open Space Investigator, Alice Donaldson, kept the HR staff at East Fishkill apprised of the claims Holmes advanced during her investigation. [Exhibit 15 to Sussman Affirmation].

41. Specifically, plaintiff identified to the investigator four whites who had been or were to be promoted in 2002-03, Diane Mucci, Jodi Strieker, Erin Mitchell and Jeannie Jones. [Exhibit 16 to Sussman Affirmation]. Lynea St. Pier, who was then an HR partner responding to plaintiff's EEO complaint pending with SDHR, sought information from Donaldson for use in IBM's response to that complaint. [Plaintiff Exhibit 17 to Sussman Affirmation].

42. On May 5, 2003, Donaldson asked Powell-Manso for a description of plaintiff's duties. [Exhibit 18 to Sussman Affirmation].

43. Powell-Manso responded that, from January - August 2002, plaintiff was "a sector/team leader and department ISO representative in the ASTC Control Center. She trained and gave direction to employees working in the Control Center and Shipping/Receiving areas..." [Exhibit 19 at BS 1093 to Sussman Affirmation].

Page 10
Page 10

44. On May 7, 2003, DiPietro faxed a document to Donaldson showing his projection that Mitchell, then still a band 3, would be promoted in 2003. [Exhibit 20 to Sussman Affirmation].

45. On May 13, 2003, DiPietro met plaintiff who was coming to work on Main Street. He told her that he was not going to lose his job over her being in court and contradicting his version of events. [Holmes, Exhibit 21 to Sussman Affirmation]. He also threatened to change her work schedule. Id.

46. Plaintiff reported this interaction to Donaldson and questioned whether the Open Door process was confidential, as she believed. [Holmes Affidavit, Exhibit 22 to Sussman Affirmation].

47. On May 22, 2003, Donaldson reported that she found plaintiff's claims of unfair denial of promotions "invalid". [Exhibit 33 to Sussman Affirmation].  The following day, IBM responded to plaintiff's complaint of employment discrimination in promotion.  In its response, IBM did not defend the Spiecker promotion or Mitchell's planned promotion.  Rather it denied that promotions had occurred. [3]

48. While its HR Department, which generated the response, then knew [as did Holmes] of the projection of Mitchell for promotion, IBM represented to SDHR

---

3  None of the Affidavits submitted in support of defendant's motion justify Nasti Mitchell's promotion or even mention the same.

Page 11

Page 11

[falsely] that in January 2003, plaintiff's management "explained [to her] that, if determined that her department needed more Band 4 production technician specialists, then qualified employees would be considered on a competitive basis, based on their skills and experience..." [Exhibit 34 to Sussman Affirmation].

49. In concluding the Open Door, Donaldson suggested that IBM waive an internal policy and allow Holmes to transfer to a new assignment before having expended 12 months under DiPietro. [Exhibit 35 to Sussman Affirmation].

50.  On May 28, 2003, IBM advised plaintiff that the company had concluded she had not been unfairly denied promotion. [Exhibit 36 to Sussman Affirmation].

51.  In July 2003, plaintiff accepted a company alternative and transferred to a new supervisor, Michael Scarano, and away from DiPietro. [Exhibits 37-38 to Sussman Affirmation].

52.  In mid-fall 2003, plaintiff again transferred to a route builder position. [Exhibit 1 to Holmes' Affirmation at 190, 196].  There, she built routes for integrators by putting together equipment recipes and process definitions into a main process definition. [Id. at 195].  Plaintiff sought this transfer because DiPietro continued to remove work from her. [Id. at 197].

53.  In the route building unit, all 8 people at higher bands were Caucasian. [Id. at

Page 12

Page 12

212].

54. Effective May 1, 2004, a white female, Diana Kloepping, was promoted to Band 4; she had joined the route building group in mid-April 2003. [Id. at 214 and Exhibit 3 to Holmes' Affidavit].

55. As of the time of her promotion, Kloepping's last rating, completed in January 2004, was a "2" achieved/exceeded commitments. See, Exhibit 4 to Holmes' Affidavit.

56. IBM claims that it promoted Kloepping due to "strong performance evaluation ratings in the Route building." See, Declaration of Jason Silbergleit, March 15, 2006, para. 12. [4]

57. At the same time, Silbergleit promoted another white woman, Jennifer Morningstar, who had been in his section for less than one year and an employee of IBM for three and one-half years. See, Exhibit 9 to Holmes' Affidavit.

58. Before this promotion, Morningstar had taken far fewer internal IBM courses when compared with plaintiff, received far fewer awards and was transferred shortly after her promotion to the supervision of Lin Zhou who rated her as a "solid contributor" for the 2004 year. See, Exhibit 10 to Holmes Affidavit.

---

4  Though plaintiff attained a higher performance rating in 2002, she was not promoted by Powell-Manso.

Page 13

Page 13

59. At the end of 2004, plaintiff was also rated a "solid contributor" and her supervisor wrote that she "a very productive year". Her evaluation noted technical skills and achievement, Holmes' willingness to take on special assignments and her "strong relationship with her integration/ engineering counterparts." [Exhibit 5 to Holmes Affidavit].

60. Despite the laudatory evaluation, Holmes was distressed she received a 2 rating and felt she deserved higher. [See, Exhibit 1 to Holmes Affidavit at 219].

61. She went to HR to complain about this review and defendant's continuing failure to promote her. [Exhibit 40 to Sussman Affirmation, Exhibit 1 to Holmes' Affidavit at 234-35]

62. The senior HR Partner who reviewed the matter, Dietrich Thompson, who is black, told plaintiff that she should know by now that "people of color"do not receive raises and promotions like whites. [Id. at 237-39]. He advised plaintiff there was nothing which could be done to redress her concerns. [Id. at 239].

63. On June 1, 2005, Alan Piciacchio, then plaintiff's manager, promoted another white female, Brenda C. Belladone-Edward to a Band 4. [Exhibits 6 to Holmes' Affidavit and 39 to Sussman Affirmation].

64. Plaintiff had participated in training Belladone-Edward, who joined route

Page 14

building after she had. [Exhibit 1 to Holmes' Affidavit at 219, 247].

65. At the time of her promotion, Belladone-Edwards' build productivity rate was not higher than plaintiff's. See, Holmes' Affidavit, para. 12.

66. In plaintiff's 2004 performance review, the following appears: "Cindy has had a very productive year as she has ascended the SIView/ Route building learning curve quite well.  Cindy has built approximately 13 routes and has created nearly 5000 PD's in a timely, accurate manner.  In particular, Cindy was lauded by the RIT team lead for her excellent TAT on MARS.  Her overall support to the PDF effort is an important strategic objective.  Further, her volume inputs on supercommon, along with her knowledge of the inner workings of the control center have helped the team immeasurably in terms of building the base plan for Supercommon implementation in the upcoming quarter." The remainder of the evaluation is laudatory, but Piciacchio only rated plaintiff a "solid contributor" for the year. See, Exhibit 7 to Holmes Affidavit.

67. Holmes had greater productivity in 2004 than Belladone-Edwards and the latter was advised in her performance review to "expand technical SIView skills to handle more complex ECNs." See, Exhibit 8 to Holmes Affidavit, BS 0499.

68. According to the plaintiff, she was more technically proficient than Belladone-

Page 15

Page 15

Edwards, but the latter woman received a higher performance rating and promotion to band 4 in June 2005. See, Holmes Affidavit at para. 12.

69. Moreover, as she noted in commenting upon her 2004 performance review, while in route building, plaintiff was shut out of assignments for three weeks as Monica Pickering provided Tammy Bardwell with excessive overtime. [Id. at 224-25, 275].

70. Both women are Caucasian. [Holmes Affidavit, para. 11].

                Respectfully submitted,

                MICHAEL H. SUSSMAN [3497]

Counsel for Plaintiff

Law Offices of Michael H. Sussman
PO Box 1005
Goshen, NY 10924
(845)-294-3991


Dated: 10 April 2006

Page 16