UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

CINDY M. HOLMES,

        Plaintiff,

- against -                                                         05 Civ. 2950 (CM)(MDF)

IBM,

        Defendant.

-----------------------------------------------------------x

DECISION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

McMahon, J:

**Introduction**

Plaintiff Cindy Holmes, an African-American woman, was hired to serve as a Production Technician by defendant IBM in July 2000. IBM utilized an employee evaluation system by which employees were assigned a "band" from1 to 10 according to their skills, contributions, and impact. Holmes, who had worked for IBM from 1980 to 1993 before being re-hired in 2000, was re-hired as a Band 3 employee.

From 2000 to 2006, Holmes was not promoted to Band 4, despite repeatedly seeking such a promotion. During this time, several Caucasian co-workers were promoted. Also during this period, Holmes transferred several times within IBM, working under five separate supervisors before voluntarily resigning from IBM in February 2006.

By a complaint filed on March 18, 2005, Holmes brought suit under 42 U.S.C. § 1981, contending that IBM discriminated against her by refusing to promote her while promoting less qualified Caucasian employees. Holmes claims that a number of comments made by supervisors support her claims, as do various other on-the-job incidents.

IBM now moves for summary judgment. For the reasons stated below, defendant's motion is denied.

**Facts**

Defendant IBM, the world's largest information technology company, has a manufacturing facility located in East Fishkill, New York. Plaintiff Cindy Holmes, an African-American woman, was employed by IBM from September 1980 to February 1981 and from August 1981 to May 1993.[1] See Affirmation of Michael H. Sussman ("Sussman") at Exhibit 22. In 2000, Holmes was re-hired by IBM as a Production Technician at the East Fishkill facility. Affidavit of Cindy Holmes ("Holmes Affidavit"), Ex. 1, at 104.

During Holmes' third tenure with the company, IBM employed a classification system in order to assign employees' job titles and salaries. The system was comprised of ten "bands." According to IBM's "Position Classification and Position Reference Guide," the bands were based upon three "equally weighted factors": skills, contribution/leadership, and impact on business/job scope. See Position Classification and Position Reference Guide ("the PRG"), Holmes Affidavit, Ex. 12. None of the ten "bands" had any specific educational or job-related requirements. Id. According to the PRG, each band is associated with a salary range which may overlap other ranges.

---

[1] It is unclear why Holmes left the employ of IBM in 1993.

See PRG at 0406.[2]  The PRG does not indicate that there was a finite number of positions available within each band; nor does it provide an explanation of when promotions from one band to the next were made available.  A promotion between bands was not necessarily accompanied by a pay raise. Id.  When Holmes was rehired in 2000, it was as a Band 3 employee.  Declaration of Allan Bloom ("Bloom 1"), Ex. A1.

Employment Under Powell-Manso

In July 2000, Holmes was assigned to work in the 200mm Control Center under the supervision of Dawn Powell-Manso, an African-American woman.  Bloom 1, Ex. A3; Declaration of Dawn Powell-Manso ("Powell-Manso") ¶ 6.  Powell-Manso had the authority to promote employees within the 200mm Control Center and recommend salary raises and/or monetary awards for her employees based on merit, and she had the authority to promote employees within the 200mm Control Center.  Powell-Manso ¶¶ 9-10.  While working under Powell-Manso, Holmes was rewarded with salary increases, merit-based awards, and laudatory performance evaluations.  Bloom 1, Ex. A4.  In addition, Powell-Manso gave Holmes, Michelle Williams and Herbert Modlin the title of "team leaders," a position which entailed supervisory responsibilities.  Like Holmes and Powell-Manso, Williams and Modlin were African-American.  Id. at Ex. A5, Ex. A6.

Powell-Manso, however, did not promote Holmes during the two years that the women worked together.  In May 2002, she did promote Jodi Spiecker, a Caucasian woman, from Band 3 to Band 4.  Powell-Manso ¶ 11.  According to Powell-Manso, Spiecker was promoted largely because she worked in an "expeditor" role, meaning that she presented information to three levels

---

[2] Certain exhibits are unnumbered.  In such a case, page numbers are references to the Bates numbering in the lower right-hand corner of the pages.

of IBM management on a daily basis, and because she had three years' experience at Band 3. Id. ¶¶ 12, 14. It was Powell-Manso's belief that Holmes "did not have the same experience presenting to management," and "had not even been in the 200mm Control Center for two years" at the time of Spiecker's promotion. Id. at 13, 15. It appears that there was only one promotion available at this time. On the same day that Spiecker was promoted, Holmes was given a 10% pay raise. Holmes Affidavit, Ex. 1, at 134.

It is Holmes' contention that she was "objectiv[ly]" more qualified for the promotion than Spiecker because she had been the "equivalent" of a Band 3 for a longer period of time, had a superior education, had participated in several educational programs sponsored by IBM, and had received company awards. However, Holmes concedes that she does not know what factors were looked at when the decision to promote Spiecker was made. Further, she does not contend that Spiecker was unqualified for promotion. Bloom 1, Ex. A9.

Holmes spoke to Powell-Manso about why she had not received the promotion. During her meeting with Powell-Manso, Holmes alleges that she was told that "it would be too much of a hassle for [Powell-Manso] to explain" promoting her because both women were African-American. Id. at 46. Powell-Manso denies telling Holmes that she was not promoted because of her race; in fact, she denies making any race-related comments to her at all. Powell-Manso ¶¶ 17, 18.

Powell-Manso awarded Holmes with an "extraordinary rating" in her August 2002 performance evaluation. Holmes, upset that she had not been promoted, asked for, and received, a lateral transfer within IBM's East Fishkill facility to the 300mm Control Center, retaining her standing as a Band 3 Employee. Sussman, Ex. 5, at 7; Holmes Affidavit, Ex. 1, at 139.

Employment Under DiPietro

Holmes' new supervisor in the 300mm Control Center was James DiPietro, a white male. Like Powell-Manso, DiPietro had the authority to promote employees and to recommend that they receive pay raises. Declaration of James DiPietro ("DiPietro") ¶¶ 8-9.

In January 2003, Holmes met with DiPietro to discuss her chances of being promoted during the course of that year. Holmes Affidavit ¶ 7; see also DiPietro ¶ 10. According to DiPietro, he told Holmes that he could not promise her a promotion in 2003 because she had only been in the 300mm Control Center for four months, and because there "were several other Band 3 employees who were competitive for a promotion." DiPietro ¶¶ 11, 12. Holmes alleges that she was told that only one person would be promoted to Band 4 that year, and she "understood" that the promotion would go to Erin Mitchell, a Caucasian female. Holmes Affidavit ¶ 7. DiPietro met with Holmes again a month later to discuss how she could improve her chances to be promoted. DiPietro ¶¶ 13, 14.

After these meetings, Holmes alleges that DiPietro "pulled work" from her. Holmes Affidavit, Ex. 1, at 179. In addition, on one occasion, he instructed her to "cover the department" while the rest of the employees went to a luncheon for co-worker Jeannine Jones' anniversary. As a result, she could not attend the luncheon. Id. at 177. In her deposition, taken on January 9, 2006, Holmes acknowledged that DiPietro never made any comments to her regarding her race. Bloom 1, Ex. A40, at 177.

In March 2003, Holmes filed a complaint with IBM through its internal "Open Door" process, claiming that Powell-Manso and DiPietro denied her promotions because of her race. Bloom 1, Ex. F, at 0961. From March to May, Investigator Alice Donaldson investigated Holmes' claims.

In the course of performing her investigation, Donaldson was faxed a document by DiPietro. According to the document, which listed the employees under his supervision, Mitchell had the "potential" to be promoted. Sussman, Ex. 20. No such notation was made next to Holmes' name. Nor was such a notation made next to the names of the other three Band 3 employees listed on the document. Id.

During her investigation, Donaldson asked Holmes whether any comments had ever been made to her that gave her "the impression that race was an issue." Holmes said that there had not been. Bloom 1, Ex. F, at 0965. She did not tell Donaldson that Powell-Manso had told her that she had not been promoted because both women were black. None of Holmes' managers - including Powell-Manso and DiPietro - remembered any specific incidents regarding race when asked by Donaldson. Id.

In May, DiPietro allegedly approached Holmes, telling her that he was not going to "lose his job over" her. Sussman, Ex. 21; see also Holmes Affidavit ¶ 9. In addition, he threatened to change her work schedule. Plaintiff at 10. Holmes then contacted Donaldson and told her that she believed that DiPietro was retaliating against her for filing her complaint. Bloom 1, Ex. F, at 0961. She also questioned whether the Open Door process was confidential, as she had been led to believe. Holmes Affidavit ¶ 10.

Later that month, Donaldson wrote a report concluding that Holmes had not been unfairly denied a promotion. Specifically, Donaldson noted that Holmes "was not the most competitive person...for promotion from Band 3 production technician to Band 4 in 2002." Bloom 1, Ex. F, at 0965. Nor was she "the most competitive person in the 300mm control center for promotion from Band 3 production technician to Band 4 in 2003." Id. at 0966. Donaldson also found that DiPietro

had not retaliated against Holmes. Id. at 0967. Still, while Donaldson did not conclude that Holmes had been treated unfairly, she recommended that IBM make an exception to its practice of requiring twelve months in a position prior to allowing a transfer so as to allow Holmes to transfer to a situation in which she would be more comfortable. Id.

In addition to commencing an "Open Door" investigation at IBM, Holmes filed a complaint with the New York State Division of Human Rights ("The SDHR") alleging that she had been denied a promotion in January 2003 because of her race. No reference was made to either Powell-Manso's failure to promote her or to her alleged comment that it would be too much of a "hassle" for Powell-Manso to do so. Bloom 1, Ex. D. In January 2004, the SDHR wrote that its investigation had "failed to conclude that the Human Rights Law had been violated." Id., Ex. E. At this time, Holmes did not bring a lawsuit against IBM.

As a result of Holmes' request to be transferred and Donaldson's recommendations that an exception to company policy be made for her, IBM management offered Holmes a number of options which would allow her to get around the policy limiting transfers. Bloom 1, Ex. H. In July 2003, she elected to transfer to the opposite day shift in the 300mm Control Center, reporting to Michael Scarano. DiPietro ¶ 14. Before she transferred, DiPietro recommended that Holmes receive a pay raise, with which she was "satisfied." Bloom 1, Ex. A15.

From August 2002 to July 2003, during which time Holmes worked under DiPietro, he did not promote any employee from a Band 3 to a Band 4 position. DiPietro ¶ 15. In November 2003, after Holmes had left his department, DiPietro promoted Mitchell to Band 4. Holmes Affidavit, Ex. 2. Holmes alleges that she was more qualified for a promotion than Mitchell because of her associates degree in computer applications management, her past work evaluations, and her tenure

as a Band 3 employee.  Plaintiff at 6-7.

Employment Under Scarano, Silbergleit, and Piciacchio

Holmes reported to Scarano in the 300mm Control Center for only a brief time: July 2003 to October 2003.  Declaration of Michael Scarano ¶¶ 5, 10.  In Fall 2003, Holmes again sought a transfer.  She reported that she wanted to leave the 300mm Control Center because DiPietro continued to harass her by giving assignments to other employees, despite the fact that she was on Scarano's shift.  Holmes Affidavit, Ex. 1, at 195-197.  That fall, she transferred from the 300mm Control Center to the Route Build Team.  Id. at 195.  During the brief time that she worked under Scarano, he did not promote a single employee from a Band 3 to a Band 4 position.  Scarano ¶ 11.

Upon transferring to the Route Build Team, Holmes reported to Jason Silbergleit.  Bloom 1, Ex. A16.  In May 2004, seven months after Holmes joined the Route Build Team, Silbergleit promoted two white employees: Diana Kloepping and Jennifer Morningstar.  Each had worked for Silbergleit for approximately one year, and, in both cases, he cited their strong performance evaluation ratings as a basis for their promotion.  Declaration of Jason Silbergleit ¶¶ 10-15.  At the time that she was promoted, Morningstar had worked at IBM for under four years.  Holmes Affidavit, Ex. 9.

In July 2004, Alan Piciacchio replaced Silbergleit as Holmes' supervisor.  Declaration of Alan Piciacchio ("Piciacchio") ¶ 5.  Piciacchio did not promote any of his employees during the remainder of 2004.  In Holmes' year-end evaluation, he rated her a "solid contributor."  However, unhappy with this evaluation and her continued failure to be promoted, Holmes contacted Human Resources to address her frustration.  In a December 7, 2004 email, Holmes complained that "there

is never enough promotions available." Bloom 1, Ex. M, at 1474. In her email, Holmes made no reference to race.

After sending this email, Holmes met with Dietrich Thompson from IBM's Human Resources office. Holmes Affidavit, Ex. 1, at 234. According to Holmes, Thompson, an African-American male, told her that "People of color do not get raises and promotions." Id. at 238. From this conversation, she felt that Thompson was telling her that she "might as well suck it up." Id. at 239. For his part, Thompson denies ever telling Holmes that IBM did not promote people of color. Declaration of Dietrich Thompson ("Thompson") ¶ 8-9.

In May 2005, Piciacchio promoted Brenda Belladone-Edwards, a Caucasian female, from a Band 3 to a Band 4 position. Belladone-Edwards had been employed by IBM since 1981. Holmes Affidavit, Ex. 6. However, she had joined Piciacchio's department more recently than Holmes, and Holmes assisted in her training. Id., Ex. 1, at 219, 247. In explaining his decision, Piciacchio pointed to Belladone-Edwards' strong performance evaluation ratings. Piciacchio ¶ 13. It is Holmes' contention that her evaluations were stronger than Belladone-Edwards' because the latter's suggested that she was not proficient in SIView skills, which were "critical" to their job. Holmes Affidavit ¶ 12. After promoting Belladone-Edwards in May, Picacchio did not promote another employee in 2005. Piciacchio ¶ 14. Around this same time, Holmes alleges that Monica Pickering, a Caucasian employee, allowed Tammy Bardwell, another white employee, to work an "excessive" amount of overtime, while not allowing her to do the same. Holmes interpreted this as denying her assignments that would better prepare her for promotional opportunities. Holmes Affidavit ¶ 11, Ex. 1, at 275.

From June 2005 to November 2005, Holmes was on disability leave. Piciacchio ¶ 16. In

January 2006, Piciacchio gave her a poor evaluation for the previous year "because of several errors on her part throughout the year and the overall poor quality of her work." Id. at 18. In February 2006, Holmes voluntarily resigned from IBM. Defendant's Brief ("Defendant") at 6.

Procedural History

On March 18, 2005, Holmes brought suit alleging that IBM intentionally discriminated against her in violation of 42 U.S.C. §§ 1981, 1981-a by denying her promotions, not allowing her to attend Jones' anniversary luncheon, "appropriat[ing]" job assignments, underpaying her, and assigning her to train a Caucasian superior. See Complaint ¶¶ 2-6. Defendant now moves for summary judgment.

## Discussion

Standard of Review

Under Federal Rule of Civil Procedure 56(c), a court will grant summary judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986). On a motion for summary judgment, the court views the record in the light most favorable to the non-moving party and resolves all ambiguities and draws all reasonable inferences against the moving party. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962); Donahue v. Windsor Locks Bd. of Fire Commn'rs, 834 F.2d 54, 57 (2d Cir. 1987). Granting of summary judgment is appropriate "where the nonmovant's evidence is merely colorable, conclusory,

speculative, or not significantly probative." Travelers Ins. Co. v. Broadway West Street Assoc's., 164 F.R.D. 154, 160 (S.D.N.Y. 1995) (citing Anderson, 477 U.S. at 248, 106 S.Ct. at 2510).

This Circuit has noted that district courts "must be 'especially cautious' in deciding whether to grant the 'drastic remedy' of summary judgment in a discrimination case, 'because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination.'" Sullivan v. Newburgh Enlarged Sch. Dist., 281 F. Supp. 2d 689, 701 (S.D.N.Y. 2003) (quoting Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999)). However, "Plaintiff is not absolved of the responsibility of producing sufficient evidence from which a reasonable juror could return a verdict in his favor." Santos v. Costco Wholesale, Inc., 271 F. Supp. 2d 565 (S.D.N.Y. 2003). Still, while the plaintiff must produce more than "conclusory allegations of discrimination," Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985), summary judgment is generally inappropriate. In general, workplace discrimination cases are "especially well-suited to for jury determination and summary judgment may be granted only when reasonable minds could not differ on the issue." Sullivan, 281 F. Supp. 2d at 702 (citing Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 437 (2d Cir. 1999)).

McDonnell-Douglas Analysis

The basic framework for analyzing discrimination claims is the three-step, burden-shifting analysis set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). According to the McDonnell-Douglas framework, the plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff is able to make out a *prima facie* case, the burden then shifts to the employer "to articulate some legitimate nondiscriminatory reason for the employee's rejection."

Fullerton v. Prudential Life Ins. Co. of Am., 99 Civ. 4453, 2000 U.S. Dist. LEXIS 17915 at *13 (S.D.N.Y. Nov. 30, 2000). Finally, if the defendant meets that burden, the plaintiff must then show that the legitimate reasons proffered by the defendant are simply a pretext for discrimination. "To make this showing, the plaintiff must demonstrate 'both that the [proffered] reason was false, and that discrimination was the real reason.'" Ricks v. Conde Nast Publs., Inc., 92 F. Supp. 2d 338, 344 (S.D.N.Y. 2000) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S.Ct. 2742, 2751 (1993)).

*1. Plaintiff's Prima Facie Case*

A plaintiff can establish a *prima facie* case of discrimination by showing that she (1) is a member of a protected class, (2) was qualified for her position (or promotion), (3) suffered an adverse employment action, and that (4) there were circumstances giving rise to an inference of discrimination. See Ricks, 92 F. Supp. 2d at 344. "Plaintiff's burden to establish a prima facie case is not onerous." Koppenal v. Nepera, Inc., 74 F. Supp. 2d 409, 412 (S.D.N.Y. 1999) (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089 (1981)) (internal quotations omitted).

Defendant contends that plaintiff cannot establish two of the four prongs of her *prima facie* case. It is undisputed that plaintiff, who is an African-American female, is a member of a protected class. Similarly, there is no question that she was not promoted by defendant, and thus has suffered from an adverse employment decision. Defendant, however, seeks summary judgment on the basis that plaintiff cannot establish (1) that she was qualified for a promotion or even that a promotion was available, and (2) that circumstances surrounding her failure to be promoted give rise to an inference

of discrimination.

First, plaintiff has sufficiently demonstrated that promotions were available. While defendant contends that plaintiff cannot prove that the promotions which she sought were, in fact, available at the times she sought them, the fact that Spiecker, Kloepping, Moringstar, and Belladone-Edwards were all promoted while plaintiff worked alongside them is evidence enough that the potential for a promotion from Band 3 to Band 4 existed.

Next, to demonstrate that she was qualified for the promotions which she sought, plaintiff simply "must offer some evidence from which a reasonable fact-finder could conclude" that she had the requisite qualifications. Ricks, 92 F. Supp. 2d at 345-46. The parties agree that IBM's Position Reference Guide Description "set[s] no minimum educational or job-related experience as requirements for any band, including 4." Plaintiff at 3; see also Defendant's Reply Brief ("Defendant 2") at 3. Plaintiff has provided evidence of her educational background and positive employment evaluations, and has offered some evidence regarding the relative qualifications of the women who were promoted in her stead. From these alone, a rational jury could conclude that she was qualified for a promotion to Band 4. Furthermore, despite defendant's assertions to the contrary, whether plaintiff was qualified for a promotion, and, if so, whether she was more qualified than the Caucasian women who were promoted between 2000 and 2005, are questions of fact that ought to be left to a jury.

Moreover, defendant does not now offer any insight into what factors were considered when making these promotional decisions, instead seemingly arguing that promotions depended on the subjective evaluations of the relevant decision-makers. However, such a subjective approach to employment decisions can easily be invoked as pretext for an employer seeking to disguise

discriminatory motivations. Jean-Gilles v. County of Rockland, 195 F. Supp. 2d 528, 532 (S.D.N.Y. 2002). Because the criteria required for promotion were fundamentally subjective, there is a factual dispute as to whether plaintiff was qualified. Therefore, the plaintiff has successfully met the second prong of the McDonnell-Douglas test.

Likewise, plaintiff satisfies the fourth prong by sufficiently demonstrating that the adverse employment action took place under circumstances which give rise to an inference of racial discrimination. Plaintiff alleges that defendant treated Band 3 employees not in the protected class more favorably. To prevail on a discrimination claim, plaintiff must show that she was treated differently in comparison with other parties similarly situated, and that there was no race-neutral basis for this different treatment. Plaintiff contends that she was bypassed for a promotion while several white employees were promoted. Each promotion was apparently approved by a white man, except for that approved by Powell-Manso, an African-American woman who allegedly intimated that she did not promote plaintiff out of a desire to avoid the "hassle" that doing so would necessitate. Therefore, plaintiff has presented facts sufficient to create an issue of fact over whether similarly situated white employees were treated differently than plaintiff was.

Because plaintiff has successfully made out a *prima facie* case, a presumption of discrimination is created, and the burden falls to the defendant to proffer a non-discriminatory reason for her failure to be promoted.

*2. Defendant's Non-Discriminatory Reason*

After a plaintiff makes out a *prima facie* case of racial discrimination, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse employment

decision.  In this case, defendant contends that plaintiff was not promoted because she was not as subjectively qualified for a promotion to Band 4, in the estimation of her supervisors, as were those of her co-workers who received such a promotion.  This is sufficient to rebut the presumption of discrimination implied by plaintiff's *prima facie* case, and return the burden to plaintiff to demonstrate that defendant's stated reason for not promoting her was simply pretextual.

     *3. Plaintiff's Attempt to Prove Pretext*

     At the third stage of the McDonnell-Douglas test, plaintiff must demonstrate that the non-discriminatory reasons offered by the plaintiff were simply a pretext for discrimination.  See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093.  "She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Id. at 256, 101 S. Ct. at 1095.  Plaintiff may make this demonstration through direct, circumstantial, or statistical evidence.  Fullerton, 2000 U.S. Dist. LEXIS 17915 at *18-19 (citing Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1226 (2d Cir. 1994)).

     For plaintiff to demonstrate that defendant's proffered reasons were pretextual, she must be more specific in her allegations than at the *prima facie* stage.  However, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  Id. at *19 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 120 S. Ct. 2097, 2109 (2000)).  Moreover, "plaintiff does not need to prove that the discriminatory animus was the sole, or even the principle reason for the adverse employment action  – only that it was *a* motivating

factor." Jamieson v. Poughkeepsie City Sch. Dist., 195 F. Supp. 2d 457, 469 (S.D.N.Y. 2002) (emphasis in original).

It falls to plaintiff to demonstrate that defendant's decision that certain other employees were more qualified for a promotion was a pretext for intentional racial discrimination. While "courts must be careful not to second-guess an employer's business judgment that it makes in good faith," plaintiff must be given the opportunity to show that defendant's real reason for not promoting her was her race. Gallo, 22 F.3d at 1226.

Here, plaintiff contends that a number of factors, when taken together, indicate that defendant's proffered reason was simply a pretext for intentional racial discrimination: (1) defendant's failure to promote plaintiff; (2) Powell-Manso's comment that she could not promote plaintiff because of her race; (3) Thompson's comment that defendant did not afford promotional opportunities to "people of color;" (4) plaintiff's impressive performance reviews and pay raises; (5) DiPietro's request that she remain in the office during Jeannine Jones' anniversary luncheon; (6) an inadequate amount of overtime assignments given to plaintiff; (7) defendant's failure to pay plaintiff the same as it paid similarly situated white employees; and (8) Piciacchio's request that plaintiff train Belladone-Edwards, a white employee and a superior.

The comments allegedly made by Powell-Manso and Thompson are, by themselves, sufficient to allow the trier of fact to conclude that the employer's race-neutral justification for not promoting plaintiff is false.

In employment discrimination cases, an employee can create a triable question of fact by showing that discriminatory comments were made, provided that a nexus exists between the discriminatory statements and the employment action. Schreiber v. Worldco, LLC, 324 F. Supp.

2d 512, 518 (S.D.N.Y. 2004).  Because both alleged comments were made in reference to defendant's failure to promote plaintiff, a nexus between the statements and the adverse employment decision is clear.

In response to plaintiff's failure to be promoted in 2002, Powell-Manso, an African American woman and her supervisor at the time, allegedly told plaintiff that she had not been promoted because it would be too much of a "hassle" for her to "explain" promoting another black woman.  Holmes Affidavit, Ex. 1, at 46.  Because the decision whether or not to promote plaintiff fell to Powell-Manso at that time, it is clear that there is a direct and clear connection between her comment and plaintiff's failure to be promoted.

Although Thompson never directly supervised plaintiff, nor had any direct involvement in deciding whether or not to promote her, his interaction with her can hardly be considered a "stray remark," as has been alleged by defendant.  "Stray remarks" by non-decision-makers are not to be accorded great weight in employment discrimination cases.  See Lloyd v. Bear Stearns & Co., Inc., No. 99 Civ. 3323, 2004 U.S. Dist. LEXIS 24914 (S.D.N.Y. Dec. 9, 2004).  However, Thompson's comment was directly related to plaintiff's failure to be promoted.  Thompson met with plaintiff at the request of HR Site Manager Jeremious Henderson after plaintiff contacted Henderson regarding her repeated failure to be promoted.  See Bloom 1, Ex. M.  When Thompson allegedly told plaintiff that defendant does not promote "people of color," his comment was directly related to plaintiff's complaints.  Further, Thompson, as an employee of defendant's Human Resources office, likely knew about IBM's policies regarding promotions.   Therefore, his comment bears a sufficient relationship to plaintiff's failure to be promoted.

Defendant argues that plaintiff's allegations are not credible.  Specifically, he points to the

fact that plaintiff did not mention Powell-Manso's comments at any time before filing this lawsuit, including in her "Open Door" investigation or SDHR complaint during 2003, or in her correspondence with Henderson in 2004. Defendant also notes that Powell-Manso put plaintiff in a "team lead" position and gave her extraordinary performance reviews as evidence that she was not afraid to reward African American employees when their performance merited it. Further, even if these comments had been made, defendant contends, plaintiff would not have been promoted because she was not as qualified as those of her co-workers who received promotions to Band 4. <u>See</u> Defendant 2 at 6. These arguments are better made to a jury.

## Conclusion

For the reasons stated above, defendant's motion for summary judgment on plaintiff's claim of discrimination is denied.

This constitutes the decision and order of the Court.

Dated: July 11, 2006

*(signature)*
U.S.D.J.